**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**EBONI T. ROBINSON**

Plaintiff,

vs.

Hon. Brandy R. McMillion
Mag Judge: Anthony P. Patti
Case No.: 26-10524

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**,
an Indiana corporation,

Defendant.

_______________________________________________/

**PARTIES' JOINT RULE(S) 16.1 & 26(f) PLAN**

Pursuant to this Court's April 20, 2026 Order to Attend Telephonic Scheduling Conference and Notice of requirements for Submission of Discovery Plan (ECF No. 7, Page ID 48-51), the above-named Parties submit their Rule(s) 16.1 and 26(f) Plan for the Court's review and consideration.

A telephonic Rule 16 Scheduling Conference is scheduled for May 26, 2026. Appearing for the parties as counsel will be Ilana S. Wilenkin on Plaintiff’s behalf and Iwana Rademaekers on Defendant’s behalf.

1) **Related Cases:**

There are no related cases.

2) **Jurisdictional Basis:**

This Court's jurisdiction exists under the Employee Retirement Income Security Act of 1974 ("ERISA"), specifically, 29 U.S.C. §§ 1132(e)(1) and 1132(f).

3) **Plaintiff's Factual Summary:**

Mrs. Robinson is 43-years-old and began working for DTE Energy on 2/22/16 as a Support Specialist, Planning & Design. She stopped working on 10/16/18 as a result of significant physical impairments and chronic, debilitating pain caused by lupus, osteonecrosis, CRPS, and other conditions.

Shortly after her last day of work, Mrs. Robinson applied to LF to begin receiving LTD benefits, which LF approved and paid beginning 3/17/19 through 5/7/25. Mrs. Robinson’s claim transitioned from own occupation to any occupation on 3/17/21. Upon information and belief, LF approved Mrs. Robinson’s total disability waiver of life premium waiver/extended death benefit for the same time period.

On 12/21/20, ALJ Turner (Social Security Administration (“SSA”)) determined that Mrs. Robinson became disabled under the SSA’s rules on

10/17/18, with benefits payable as of 4/1/19. Based on that favorable decision, LF was entitled to recover from Mrs. Robinson an approximate $22,000.00 overpayment, which she reimbursed in full. The SSA has been paying Mrs. Robinson benefits since 4/1/19 without issue.

Around 2024, LF initiated surveillance and conducted a general activity investigation. Surveillance yielded 3 days of unrevealing video, and LF's general investigation located social media posts that addressed chronic pain, positive thoughts and affirmations, real estate references, and minimal social activities.

On 3/24/25, LF enlisted Angelica Shepard, M.D. (rheumatology) to perform a records review. In relevant part, Dr. Shepard noted:

> The claimant has a history of multiple rheumatological and orthopedic conditions. She has a long history of SLE, fibromyalgia, and osteonecrosis due to prolonged steroid use. The claimant also has a history of chronic pain syndrome, hip pain, neuropathic pain of the BLE, neck pain, myalgia, and thoracic back pain. She complains of constantly worsening pain with no relief from medications. She does not use assistive devices but she ambulates with difficulty due to osteonecrosis of the bilateral lower extremities. She also experiences significant pain symptoms in her upper/mid/thoracic region . . . The claimant's pain symptoms have not shown any evidence of significant improvement and thus warrant the placement of restrictions and limitations within the period of review.

> **Sitting: Constantly**
> **Standing: Frequently**
> **Walking: frequently**
> Lifting: Occasionally, up to 20 lbs. BUE
> Carrying: Occasionally, up to 20 lbs. BUE
> Pushing: Occasionally, up to 20 lbs. BUE
> Pulling: Occasionally, up to 20 lbs. BUE
> Climbing stairs: Occasionally
> Balancing: Frequently
> Stooping: Frequently
> Kneeling: Frequently
> Crouching: Frequently
> Crawling: Occasionally
> Reaching: Frequently overhead and below waist levels, BUE; Unrestricted to desk level, BUE
> Use lower extremities for foot controls: Frequently BLE
> Fine manipulation: Unrestricted BUE
> Simple and firm grasping: Unrestricted BUE . . .
>
> No, the medical records do not support the restrictions and limitations that were recommended by treating providers for the timeframes in question.
>
> The claimant's abilities are sustainable on a full-time basis. While I agree that restrictions are supported, I respectfully disagree with the recommendation that the claimant is unable to perform all activities due to chronic pain. The claimant can sustain full-time activities with appropriate restrictions.

(Claim File). (emphasis added).

LF sent Dr. Shepard's report to Dr. Juratli (Mrs. Robinson's primary care physician) and Dr. Stubbs (Mrs. Robinson's rheumatologist) for review and comment.

On 4/14/25, Dr. Juratli (Mrs. Robinson's PCP) responded to written questions as follows:

> 2) I have supplied additional information/comments to highlight where I do not agree with the findings of the review. Patient does have depression that limits her work ability, given her advanced hip osteonecrosis I dont [sic] believe she can or should crawl, crouch, kneel or stoop. Also use of stairs should be minimal/infrequent.

(Ex. 2 of 11/18/25 Administrative Appeal).

On 4/24/25, Dr. Stubbs responded to LF's questions by agreeing with Dr. Shepard's recommendations. (Ex. 3 of 11/18/25 Administrative Appeal).

Based on Dr. Shepard's opinions, Jason M., M.Ed., CRC, ABVE/F (LF employee) conducted a Transferable Skills Analysis on 5/1/25 in which he provided a selection of sedentary occupations, and LF denied Mrs. Robinson's LTD and, presumably, extended death/life premium waiver claims on 5/8/25.

On 11/18/25, Mrs. Robinson appealed LF's denial and provided it with updated medical and functional evidence supporting total and permanent disability under the LF Policy/Policies, including a 10/14/25 Functional Capacity Evaluation that concluded:

> Reliability of Pain results obtained during testing indicate pain could have been considered while making functional decisions.

> Client is unable to work full time. The unskilled sedentary occupational base is significantly eroded because she is unable to lift floor to waist 10 lbs or slightly less, shoulder lift 10 lbs or slightly less, power lift 10 lbs or slightly less, bilateral carry 10 lbs or slightly less, stand for 1 hour and 45 minutes, and sit for approximately 6 hours of an 8-hour workday. The client lifted 2.5 pounds to below waist height. The client lifted 1 pounds to shoulder height and 0 pounds overhead. The client carried 2 pounds. Pushing abilities were evaluated and the client pushed 0 horizontal force pounds respectively.
>
> Non-material handling testing indicates the client demonstrates an occasional tolerance for Simple Grasping, Firm Grasping, Pinching, Walking, Above Shoulder Reach, Bending, Dynamic Balance and Stair Climbing. The client demonstrated the ability to perform Forward Reaching with frequent tolerance. The functional activities this client should avoid within a competitive work environment include Squatting, Sustained Kneeling, Repetitive Kneeling, Crawling, Static Balance and Ladder/Other.
>
> During objective functional testing, client demonstrated consistent effort throughout 100.0% of this test which would suggest client put forth full and consistent biomechanical and evidence based effort during this evaluation.

(Ex. 6 of 11/18/25 Administrative Appeal).

After reviewing Mrs. Robinson's Functional Capacity Evaluation, Dr. Juratli offered the following revised opinions:

> **11/5/25**
> Our patient, Eboni Robinson, is an established patient under our care for more than 10 years. I know her well. Mrs. Robinson has SLE and osteonecrosis of her hips. This causes

> significant limitation in her mobility and her ability to fully or independently take care of herself. In my observation, she is unable to engage in repetitive climbing, squatting, stooping, lifting, carrying, pushing, or kneeling. In my best judgement her ability to sit for a prolonged period to achieve meaningful, gainful employment is also limited. Patient has depended on her husband to help with providing for herself and their home.

(Ex. 7 of 11/18/25 Administrative Appeal).

LF next directed Mrs. Robinson's information to Roger Belocurt, M.D. (occupational-preventative medicine) to conduct a peer review. On 12/16/25, Dr. Belcourt opined as follows:

> Following review of the available medical documentation, along with the treating provider's recommendation(s) for activity restrictions, there was sufficient information available to form an opinion as detailed below, and there was **no need to consult the treating provider for clarification**.
>
> The claimant is a 43-year-old [sic] female with a medical history significant for Systemic lupus erythematosus, bilateral hip osteonecrosis, CRPS, and thrombocytopenia . . .
>
> As such, restrictions and limitations (R/Ls) are medically supported for low back pain and right hip pain.
>
> **Sitting: Constantly**
> **Standing: Frequently**
> Walking: Occasionally
> Lifting: Occasionally, up to 20lbs, BUE
> Carrying: Occasionally, up to 20lbs, BUE
> Pulling: Occasionally, up to 20lbs, BUE
> Pushing: Occasionally, up to 20lbs, BUE
> Climbing stairs: Occasionally
> Balancing: Occasionally

> Stooping: Occasionally
> Kneeling: Occasionally
> Crouching: Occasionally
> Crawling: Occasionally
> Reaching: Occasionally overhead and below waist levels, unrestricted to desk level, BUE
> Use lower extremities for foot controls: Occasionally RLE, Unrestricted LLE
> Fine manipulation: Unrestricted BUE
> Simple and firm grasping: Unrestricted BUE
>
> No climbing ladders
> No working at unprotected heights
> No operating or being around heavy machinery
> Operating motor vehicles: Occasionally . . .

The claimant's abilities are sustainable on a full-time basis from 05/07/2025 to present.

The claimant can function in a work setting for 8 hours per day, up to 40 hours per week.

The claimant's pain complaints are multi-site and affect her low back, neck, left shoulder, and right hip. She describes the pain using multiple qualities: aching, dull, sharp, shooting, spasmodic, stabbing, tender, and with pins and needles, indicating both nociceptive and neuropathic components. Physical examinations repeatedly demonstrate restricted spinal and hip range of motion, deconditioned musculature, and difficulty with ambulation, confirming that her pain is not only subjective but also objectively associated with functional impairment . . .

**4. Do medical records support any R&Ls that were recommended by treating providers for the timeframes in question?**

**[A]. Yes, medical records support R&Ls that were recommended by the treating providers for the timeframes in question**.

On 11/05/2025, Sham Maghout-Juralli, MD noted that she had SLE and osteonecrosis of her hips, which caused significant limitations in her mobility and her ability to fully and independently take care of herself. The provider observed that she was unable to engage in repetitive climbing, squatting, stooping, lifting, carrying, pushing, or kneeling. In their best judgment, her ability to sit for a prolonged period to achieve meaningful gainful employment was also limited. It was further noted that she was dependent on her husband for assistance with her personal care and household tasks . . .

**Additional Questions**

**7. Please discuss the restrictions or limitations placed upon the claimants' physical activities by the attending physician(s) and the Functional Capacity Evaluation; are they reasonable and consistent with the medical findings? If your findings are different, please explain.**

**[A].** 10/14/2025, Maria Bargardi, PT, DPT/ Physical Therapy: Functional Capacity Evaluation: A baseline Functional Capacity Evaluation was completed to determine the claimant's tolerance to perform work tasks. It was noted that the claimant was unable to work full-time. The unskilled sedentary occupational base was significantly eroded because she was unable to lift floor-to-waist 10 lbs or slightly less, perform a shoulder lift of 10 lbs or slightly less, complete a power lift of 10 lbs or slightly less, or perform a bilateral carry of 10 lbs or slightly less. She was able to stand for 1 hour and 45 minutes and sit

> for approximately 6 hours of an 8-hour workday. The claimant lifted 2.5 lbs to below waist height, lifted 1 lb to shoulder height, and lifted 0 lbs overhead. She carried 2 lbs. Pushing abilities were evaluated, and the claimant pushed 0 lbs of horizontal force. Non-material handling testing indicated the claimant demonstrated occasional tolerance for simple grasping, firm grasping, pinching, walking, above-shoulder reaching, bending, dynamic balance, and stair climbing. She demonstrated the ability to perform forward reaching with frequent tolerance. Functional activities the claimant should avoid in a competitive work environment include squatting, sustained kneeling, repetitive kneeling, crawling, static balance, and ladder/other climbing. **The restrictions or limitations placed upon the claimant's physical activities by the attending physician(s) and the Functional Capacity Evaluation are reasonable but excessive** in 'The claimant lifted 2.5 lbs to below waist height, lifted 1 lb to shoulder height, and lifted 0 lbs overhead. She carried 2 lbs. Pushing abilities were evaluated, and the claimant pushed 0 lbs of horizontal force.'

(Claim File). (emphasis added).

LF then contacted Dr. Belcourt to request that he clarify his opinions, which he did on 12/29/25 as follows:

> **1) You outline restrictions and limitations under question #3 and indicate the claimant can function on a full-time basis.**
>
> **[A].** Yes, the claimant has reliable and sustainable capacity. Given she ambulates independently with only mild difficulty and retains functional range of motion despite limitations. Although pain, tenderness, and

deconditioning are present, these findings indicate reduced tolerance rather than an inability to perform consistent, modified activities on a sustained basis.

2) **Under question #4 you indicate R&Ls recommended by the treating providers are supported. Per Dr. Maghout-Juralli** [sic]**, this provider opines that the employee's ability to be gainfully employed is limited.**

**[A]. No, medical records do not support R&Ls that were recommended by the treating providers for the timeframes in question**.

3) **Under question #7 you indicate restrictions and limitations placed by attending physician and FCE are reasonable but excessive but do not provide a rationale for your clinical opinion.**

**[A].** The objective findings show pain, limited range of motion, deconditioning, and mild difficulty ambulating, but they do not demonstrate severe weakness, neurological deficit, or inability to perform basic functional tasks. These findings support functional restrictions, not the extreme lifting, pushing, and sedentary work limitations outlined in the Functional Capacity Evaluation.

4) **Clarification is needed. In your report, you outline restrictions and indicate the employee has reliable sustainable capacity. Based on your response under question #4 and 7 you also agree with restrictions and limitations from the attending physician and FCE that are clearly more restrictive and seem to preclude full time capacity.**

**We need clarification along with a clinical rationale as to what restrictions and limitations are supported by**

> **the medical evidence and whether the employee has reliable and sustainable capacity.**
>
> **[A].** The objective findings show pain, limited range of motion, deconditioning, and mild difficulty ambulating, but they do not demonstrate severe weakness, neurological deficit, or inability to perform basic functional tasks. These findings support functional restrictions, not the extreme lifting, pushing, and sedentary work limitations outlined in the Functional Capacity Evaluation.

(Claim File).

LF also commissioned an updated 1/8/26 Transferrable Skills Analysis based on Dr. Belcourt's fluctuating opinions and ultimately denied Mrs. Robinson's appeal on 2/4/26, which prompted the instant litigation.

3a) **Defendant's Factual Summary:**

Defendant denies the general allegations of Plaintiff's Complaint and, in response, states that Defendant properly adjudicated Plaintiff's claim for long term disability benefits pursuant to the terms and conditions of the applicable LTD Plan documents. Specifically, Defendant contends that its consideration of the relevant medical information, among other evidence, revealed that Plaintiff did not meet the LTD Plan's definition of disability under the terms of the LTD Plan. Defendant also states that its claims decision was in accordance with the LTD Plan's provisions, legally correct,

and neither arbitrary nor capricious. Furthermore, Lincoln denies that it issued a life insurance policy to DTE or administered any claims for waiver of life insurance premium/extended death benefits under any life insurance policy that may have been sponsored by DTE.

4) **Legal Issues and Standard of Review:**

Whether LF correctly denied Mrs. Robinson's claims for LTD and extended death benefits under the governing Policies.

The Group Disability Income Policy issued by Defendant to DTE Energy was effective on January 1, 2013, and Michigan is listed is the governing jurisdiction in this policy. De novo is the correct standard of review.

5) **Amendment of Pleadings:**

None anticipated.

6) **Discovery:**

Not applicable.

7) **Electronic Discovery:**

Not applicable.

8) **Settlement:**

Mrs. Robinson has provided LF with a settlement demand and is hopeful that the Parties will be able to resolve the case.

9) **Consent:**

The Parties do not consent to a magistrate conducting any of the proceedings.

10) **Trial:**

Not applicable.

9) **Motions:**

LF will file and serve the Administrative Record by 7/13/26, which Record should encompass all information, records, documentation, electronically stored or otherwise, etc. that has been generated since the inception of Mrs. Robinson's LTD and extended death benefit claims through LF's final 2/4/26 denial.

Pursuant to Fed Rules Civ Proc R 52, the Parties shall file cross-motions for judgment on the administrative record and responses as follows:

- Cross-motions filed by 9/4/26;
- Responses filed by 9/18/26; and
- no replies.

Approved as to form and substance:

s/ Ilana S. Wilenkin (P61710)
Plaintiff's attorney
3000 Northwestern Hwy.,
Ste. 108
Farmington Hills, MI 48334
(248) 932-3505, ext. 323
ilana@lawsmf.com

s/ Iwana Rademaekers
Defendant's attorney
14785 Preston Road, Suite 550
Dallas, TX 75254
(214) 579-9319
iwana@rademaekerslaw.com

Dated: April 30, 2026